UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GERBER LIFE INSURANCE COMPANY,

       Plaintiff,

v.

MONICA BISSA and DAVID PARCHA

       Defendants,

and

MONICA BISSA,

       Cross-Claimant,

v.

DAVID PARCHA,

       Cross-Defendant.

_____ /

Case Number 12-12368
Honorable Thomas L. Ludington

**OPINION AND ORDER GRANTING
CROSS-CLAIMANT'S MOTION FOR SUMMARY JUDGMENT**

      What does the word "parents" mean? From the text of the life insurance policy at issue in this case, the meaning is not readily apparent.

      Though the term is ambiguous, the extrinsic evidence is not. The undisputed evidence is that the person who purchased the insurance policy, the insured's mother, intended the term to refer to her (and her new husband), not her former spouse. She is entitled to judgment as a matter of law.

**I**

**A**

Monica Bissa and David Parcha are the biological parents of Jacob Parcha, who is now deceased. This case arises out Jacob's death — more precisely, the life insurance policy providing benefits in the event of his death.

In 1988, Bissa and Parcha divorced. Legal custody of the two children of the marriage, Jacob (age 5) and Rebecca (age 7), was joint. Physical custody was awarded to Bissa, with visitation rights awarded to Parcha.

In 1994, Bissa applied for a whole life insurance policy for Jacob (age 11) from Gerber Life Insurance. Gerber Life is a New York corporation; its home office is also in New York.

At the time Bissa completed the application for Jacob, she had been divorced from Parcha for six years. Remarried, she was living with Jacob and her new husband, Thomas Bissa.

On September 20, 1994, Gerber issued the policy to Bissa. In exchange for yearly payments of $150.48, Gerber promised to pay $15,000 if Jacob died before age 21, $30,000 if he died age 21 or older. The intended beneficiary is the principal question in this case.

The policy application provides: "Unless otherwise requested, *the parents of the proposed insured* shall be the beneficiaries." Policy Application 1 (emphasis added), *attached as* Pl.'s Compl. Ex. A. (The application does not define the term "parent.") The policy, in turn, provides:

> Beneficiary: The beneficiary named in the application or in the last beneficiary designation filed with us will receive the proceeds. If two or more people are named beneficiaries, the proceeds will be paid to the person or persons who are alive when the benefit becomes payable. If more than one beneficiary is alive, the proceeds will be shared equally, unless otherwise specified.

Policy 5, *attached as* Pl.'s Compl. Ex. A.  Bissa did not did not designate a different beneficiary on the application (or any time thereafter).  She explains that she simply assumed that the benefit was payable to her — not her ex-husband.  Bissa Aff. ¶ 4, *attached as* Bissa Mot. Ex. 3.  She was the one who purchased the policy and paid the premiums.  Parcha contributed nothing.

Fifteen years passed.  Bissa paid the premiums, for a time.  Parcha did not, ever.  Jacob died on May 3, 2009.  He was 26.

Gerber learned of Jacob's death in February 2012.  Despite the policy's lapsed status, Gerber notified Bissa that benefits under the policy remained payable.  Specifically, because of the lapsed state, coverage had continued as extended term insurance, entitling the beneficiaries to $30,000.

Bissa sent Gerber the information necessary to process the claim, and in March 2012 Gerber issued Bissa a check for $15,000.

Bissa demanded the remaining $15,000.  Gerber declined.

**B**

Instead, Gerber filed a complaint for interpleader in this Court against Bissa and Parcha based on diversity of citizenship pursuant to 28 U.S.C. § 1335.

Both Bissa and Parcha answered.  Bissa also counterclaimed against Parcha, asserting that it "would be unfair, unconscionable, and wrong [for the policy proceeds] to be paid to David Parcha who had no role and provided no assistance regarding the acquisition of the policy on the life of Jacob Parcha."  Parcha tersely responded to this assertion: "He was my son too."

In September 2012, a stipulated order was entered permitting Gerber to interplead the contested $15,000.  The order also dismissed Gerber from the case.

On February 11, Bissa moved for summary judgment. She writes that "the policy is inherently ambiguous because it does not define the term 'parent' anywhere on the application or within the policy terms itself received subsequent to the application." Bissa's Br. Supp. Mot. Summ. J. 6. Because it is ambiguous, Bissa continues, the Court may consider extrinsic evidence. *Id*. "Given that the Gerber life insurance policy was purchased solely by one parent and not a second parent who had already divorced Monica Bissa," she reasons, "it is inappropriate that David Parcha should share in any part or payment as a result of the insurance policy for which he had no participation." *Id*.

Bissa did not, however, properly serve Parcha. Accordingly, in March 2013 an order was entered directing Bissa to do so and, moreover, to provide proof of service. ECF No. 19. Complying, Bissa filed proof of service certifying that the motion was served on Parcha by mail on April 1, 2013.

Local Rule 7.1 provides: "A response to a dispositive motion must be filed within 21 days after service of the motion." Under the Federal Rules of Civil Procedure, when a paper is served by mailing three days are added to the time to respond. Fed. R. Civ. P. 5(b)(2)(E), 6(d).[1] And the day that triggers the beginning of the period is excluded. Fed. R. Civ. P. 6(a)(1)(A). Thus, a party actually has 24 days to respond.

Here, Bissa certifies that the motion was served on Parcha by mail on April 1. The deadline for responding was therefore Thursday, April 25, 2013. Today is Monday, May 20, 2013. Parcha has not filed a response to the motion for summary judgment.

---

[1] "When a party may or must act within a specified time after service and service is made under Rule 5(b)(2)(C), (D), (E), or (F)," Rule 6(d) provides, "3 days are added after the period would otherwise expire." Rule 5(b)(2)(C), in turn, provides: "A paper is served under this rule by . . . mailing it to the person's last known address — in which event service is complete upon mailing."

II

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted).

III

A

When jurisdiction is founded on diversity of the parties' citizenship, as in this case, the forum state's choice-of-law rules apply. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). That the case was filed pursuant to the federal interpleader statute, 28 U.S.C. § 1335, does not change this analysis because that statute rests on diversity jurisdiction. § 1335(a)(1); *see, e.g.*, *Republican Nat. Comm. v. Taylor*, 299 F.3d 887, 890 (D.C. Cir. 2002); *see also Griffin v. McCoach*, 313 U.S. 498, 503 (1941) (applying forum state's choice-of-law rules in statutory interpleader action). Here, the forum state is Michigan.

Under Michigan law, as elsewhere, an insurance policy is a species of contract. *Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 433 (Mich. 1992); *Morbark Indus., Inc. v. W. Emp'rs Ins. Co.*, 429 N.W.2d 213, 219 (Mich. Ct. App. 1988); *cf.* Richard Posner, Economic Analysis of Law § 4.5 (6th ed. 2003) (analyzing both "insurance contracts" and "contracts as insurance").

Under Michigan law, "the place of making the contract determines the applicable law as between the states, and that the contract is deemed to have been made in the state where the last act necessary to make it a binding agreement took place." *Morbark Indus*, 429 N.W.2d at 219 (citing *Ohio v. Eubank*, 294 N.W. 166 (Mich. 1940)); see also *Meijer, Inc. v. Gen. Star Indem. Co.*, 826 F. Supp. 241, 244 (W.D. Mich. 1993) (collecting cases), *aff'd* 61 F.3d 903 (6th Cir. 1995).

For insurance contracts, generally the insurer's "countersigning is the last act and the place of countersigning is the place where the contract was made." *Morbark Indus*, 429 N.W.2d at 219 (*Chrysler Corp. v. Ins. Co. of North America,* 328 F.Supp. 445 (E.D. Mich. 1971)).

Here, Gerber is a New York corporation with its home office in New York. The face of the application shows that it was signed by Bissa. She then sent it to Gerber, where it was countersigned by one of Gerber's agents. Because the countersignature — the acceptance — was made in New York, that state's law applies.[2]

**B**

In New York, the goal in "the interpretation of contracts of insurance is to give effect to the intent of the parties." *Mount Vernon Fire Ins. Co. v. Belize NY, Inc.*, 277 F.3d 232, 236 (2d Cir. 2002) (quotation marks omitted) (quoting *Village of Sylvan Beach, N.Y. v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995)).

Because the best evidence of the parties' intent is the language of the contract itself, when possible "[t]he New York approach to the interpretation of contracts of insurance is to give effect to the intent of the parties as expressed in the clear language of the contract." *Ment Bros. Iron Works Co., Inc. v. Interstate Fire & Cas. Co.*, 702 F.3d 118, 122 (2d Cir. 2012) (quoting *Mount*

---

[2] Bissa, it should be noted, does not give attention to the choice-of-law question. And Parcha, who did not respond to the motion, does not give attention to any of the issues in the case.

-6-

*Vernon Fire Ins. Co*, 277 F.3d at 236); *cf.* Oliver Wendell Holmes, Jr., *The Path of the Law*, 10 Harv. L. Rev. 457, 464 (1897) (discussing formalism in contract law). Put differently, "where contract language is clear and unambiguous, the intent of parties to a contract is ascertained from the plain and ordinary meaning of the language used." *Vail-Ballou Press, Inc. v. Graphic Commc'ns Int'l Union/Int'l Bhd. of Teamsters, Local 898-M*, 480 F. Supp. 2d 568, 572 (N.D.N.Y. 2007) (collecting cases).

"The test for ambiguity is whether the language of the insurance contract is susceptible of two reasonable interpretations." *DMP Contracting Corp. v. Essex Ins. Co.*, 907 N.Y.S.2d 487, 489 (2010) (quotation marks omitted) (quoting *State v. Home Indem.Co.*, 486 N.E.2d 827 (N.Y. App. Div. 1985)). Objective criteria are used: "when construing an insurance policy, the tests to be applied are common speech and the reasonable expectation of an ordinary person." *Commercial Ins. Co. of Newark, N.J. v. Popadich*, 890 N.Y.S.2d 36, 36 (N.Y. App. Div. 2009) (citing *Ace Wire & Cable Co. v. Aetna Cas. & Sur. Co.*, 457 N.E.2d 761 (N.Y. 1983)). "Moreover, the circumstances particular to each case must be considered in construing the meaning of the term." *Gen. Assur. Co. v. Schmitt*, 696 N.Y.S.2d 72, 75 (N.Y. App. Div. 1999) (collecting cases).

Here, the policy language at issue provides: "Unless otherwise requested, *the parents of the proposed insured* shall be the beneficiaries." Policy Application 1 (emphasis added). The question is whether the word "parents" is ambiguous.

New York courts have repeatedly looked to both *Webster's Dictionary* and *Black's Law Dictionary* to determine whether a particular term in an insurance policy is ambiguous. *E.g.*, *Randolph v. Nationwide Mut. Ins. Co.*, 650 N.Y.S.2d 964, 965 (N.Y. Sup. Ct. 1996) (looking to *Webster's* and *Black's*), *aff'd sub nom. Randolph v. Nationwide Mut. Fire Ins. Co.*, N.Y.S.2d 650

(N.Y. App. Div. 1997); *Technicon Electronics Corp. v. Am. Home Assur. Co.*, 533 N.Y.S.2d 91, 102 (N.Y. App. Div. 1988) (looking to *Webster's*), *aff'd,* 74 542 N.E.2d 1048 (N.Y. 1989); cf. Ellen P. Aprill, *The Law of the Word: Dictionary Shopping in The Supreme Court*, 30 Ariz. St. L.J. 275 (1998); Jeffrey L. Kirchmeier & Samuel A. Thumma, *Scaling the Lexicon Fortress: The United States Supreme Court's Use of Dictionaries in the Twenty-First Century*, 94 Marq. L. Rev. 77 (2010).

*Webster's* lists two principal definitions for "parent" (the singular of "parents"), specifying that it means "(a) one that begets or brings forth offspring; (b) *law* (1) a lawful parent (2) a person standing in loco parentis although not a natural parent." *Webster's Third International Dictionary* 1641 (unabridged ed. 2002).

*Black's*, in turn, notes: "In ordinary usage, the term denotes more than responsibility for conception and birth." *Black's Law Dictionary* 1144 (8th ed. 2004). That is, the ordinary understanding of "parent" is more than "one that begets or brings forth offspring." *Webster's*, *supra*, at 1641.

Among the various types of "parent," *Black's* lists "absent parent," "adoptive parent," "biological parent," "birth parent," "constructive parent," "custodial parent," "de facto parent," "Disneyland parent," "domiciliary parent," "dual-residential parent," "genetic parent," "intended parent," "intentional parent," "noncustodial parent," "primary domiciliary parent," "psychological parent," "residential parent," "stepparent," and "surrogate parent." *Black's*, *supra*, at 1144–45.

Here, however, the policy does not contain an adjective modifying "the parents." Consequently, it could reasonably be interpreted to refer to, among others, the insured's: (1) biological parents, Bissa and Parcha; (2) custodial parents, Bissa and her new husband; (3)

stepparents, such as Bissa's husband; or all of the above. In context, the term is ambiguous. *Cf.* 13 Am. Jur. 2d *Proof of Facts* 681 (1977) (noting that "[s]pecial insurance law problems arise in connection with children of divorced or separated parents").

When an insurance policy term is ambiguous, as here, "the parties may submit extrinsic evidence as an aid in construction." *Essex Ins. Co. v. Laruccia Const., Inc.*, 898 N.Y.S.2d 558, 559 (N.Y. App. Div. 2010) (citing *State v. Home Indem. Co.*, 486 N.E.2d 827 (N.Y. 1985)); *see generally* 68A N.Y. Jur. 2d *Insurance* § 846 (2013) ("Where an insurance policy is found to be ambiguous, the parties may submit extrinsic evidence to determine the intent of the parties, to resolve the ambiguity, or to aid in construction." (footnote omitted)).

The Second Circuit elaborates: "When faced with ambiguity in an insurance policy, a reviewing court should consider extrinsic evidence submitted by the parties to assist in determining their actual intent." *McCostis v. Home Ins. Co. of Ind.*, 31 F.3d 110, 113 (2d Cir. 1994) (applying New York law).

Here, Bissa submits an affidavit explaining that her intent was to have the benefit payable to her (and her new husband), not her ex-husband. Bissa Aff. ¶ 4, *attached as* Bissa Mot. Ex. 3. Put simply, she intended "the parents" to mean her and her new husband — not her and her ex-husband. Parcha has offered no evidence disputing that this was the actual intent motivating the purchase of the policy.

The purpose of the insurance policy interpretation is to give effect to the intent of the parties. Here, though the language of the policy itself is ambiguous, the extrinsic evidence is unequivocal. Bissa was the intended beneficiary.

## C

In passing, it should be noted that the same conclusion arises if Michigan law is applied. Under Michigan law, "[a]n insurance policy is much the same as any other contract. It is an agreement between the parties in which a court will determine what the agreement was and effectuate the intent of the parties." *Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 433 (Mich. 1992).

Thus, the Michigan Supreme Court instructs that "it is well-established that in construing contractual provisions due regard must be had to the purpose sought to be accomplished by the parties as indicated by the language used, read in the light of the attendant facts and circumstances. Such intent when ascertained must, if possible, be given effect and must prevail as against the literal meaning of expressions used in the agreement." *City of Grosse Pointe Park v. Mich. Mun. Liab. & Prop. Pool*, 702 N.W.2d 106, 114 (Mich. 2005) (quotation marks and brackets omitted) (quoting *W. O. Barnes Co., Inc. v. Folsinski*, N.W.2d 302 (Mich. 1953)).

Likewise, "attendant facts and circumstances explain the context in which the words were used and may reveal the meaning the parties intended." *City of Grosse Pointe*, 702 N.W.2d at 114 (citing *Sobczak v. Kotwicki*, 79 N.W.2d 471 (Mich. 1956))

Consequently, "extrinsic evidence is admissible to prove the existence of the ambiguity, and, if a latent ambiguity is proven to exist, extrinsic evidence may then be used as an aid in the construction of the contract." *City of Grosse Pointe*, 702 N.W.2d at 115 (citing *McCarty v. Mercury Metalcraft Co.*, 127 N.W.2d 340 (Mich. 1964)).

Application of these rules renders the same result reached under New York law. Though the language of the policy itself is ambiguous, the extrinsic evidence is unequivocal. Bissa is the intended beneficiary.

**D**

Finally, it should also be noted that Parcha has not responded to Bissa's motion. Cautioning against "advocacy for the silent," *id*. at 406 n.7, the Sixth Circuit instructs that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 406 (6th Cir. 1992).

Bissa is entitled to judgment as a matter of law.

**IV**

Accordingly, it is **ORDERED** that Bissa's motion for summary judgment (ECF No. 17) is **GRANTED**.

It is further **ORDERED** that Bissa is **DIRECTED** electronically submit to through CM/ECF via the "proposed order" link located under the Utilities section a proposed disbursement order on or before **June 10, 2013**. The proposed order must comply with the requirements contained in Eastern District of Michigan Local Rule 67.1(b).

s/Thomas L. Ludington<br>THOMAS L. LUDINGTON<br>United States District Judge

Dated: May 20, 2013

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and upon David Parcha, at 6421 West 80th Avenue, Ancharage, AK 99502 by first class U.S. mail on May 20, 2013.

s/Tracy A. Jacobs
TRACY A. JACOBS